# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

───────────────────

№ 14-CV-6951 (JFB)(SIL)

───────────────────

JAMES GUNN,

Plaintiff,

VERSUS

UNITED PARCEL SERVICE, INC.,

Defendant.

───────────────────

**MEMORANDUM AND ORDER**
August 22, 2016

───────────────────

JOSEPH F. BIANCO, District Judge:

James Gunn ("Gunn" or "plaintiff"), proceeding *pro se*, filed this action against United Parcel Service, Inc. ("UPS" or "defendant") on November 26, 2014, alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff has been a delivery truck driver for defendant since his early forties. He alleges that defendant denied him a promotion because of his age.

Defendant moves for summary judgment on three grounds: (1) that the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts plaintiff's claim because his case is substantially dependent upon an interpretation of his collective bargaining agreement ("CBA"); (2) that plaintiff's claim is time-barred based on the statute of limitations; and (3) that plaintiff's claim fails on the merits. For the reasons that follow, the Court grants plaintiff's motion. Although plaintiff's claim is not preempted, it is both untimely and meritless. First, the claim is time-barred because the alleged discriminatory conduct occurred more than 300 days before plaintiff filed a charge of discrimination with the Equal Employment Opportunity Council ("EEOC"). Second, even if plaintiff's claim is timely, it fails as a matter of law because there is no evidence that defendant did not promote plaintiff because of his age.

I. BACKGROUND

A. Facts

The following facts are taken from the

parties' depositions, affidavits, and exhibits as well as defendant's Local Rule 56.1 statement of facts.[1]

1.   The Parties

In September 2006, defendant hired then forty-year-old plaintiff as a part-time loader and unloader in its Nassau, New York facility. (Def.'s 56.1 ¶¶ 1–2.) Two years later, plaintiff picked up work as a part-time driver. (*Id.* ¶¶ 3, 23.) Throughout his tenure, he has been a member of the local union, and the terms and conditions of his employment are governed by a CBA and a supplemental agreement (hereinafter, the "Supplemental Agreement"). (*Id.* ¶¶ 4–5.)

2.   Plaintiff's Promotion Attempts

On three occasions, plaintiff attempted to become a full-time package car driver. (*Id.* ¶¶ 27, 32, 55.) At UPS, a part-time employee may submit his name for consideration on a part-time to full-time driving list. (*Id.* ¶ 12.) If selected, that employee must complete a probationary period, in which he must work forty days as a driver in a seventy-day period. (*Id.* ¶¶ 13–15.)

UPS management then decides whether the part-time employee has met the standards to become a full-time driver. (*Id.* ¶ 16.) Management considers whether the applicant completed his routes at "scratch" (i.e., the amount of time UPS expects) or if he is "under allowed" (i.e., faster than the amount of time expected). (*Id.* ¶¶ 38–39.) An employee may fail the evaluation if his routes are "over allowed" (i.e., slower than the amount of time expected). (*Id.* ¶ 37.) If the employee does fail, he must return to his part-time job and wait one year to reapply for the full-time position. (*Id.* ¶ 17.)

Plaintiff's first attempt started on April 30, 2012. (*Id.* ¶ 27.) The attempt was short-lived because plaintiff hit a parked car less than two weeks later. (*Id.* ¶ 29.) As a result, plaintiff failed to complete the probationary period, and defendant returned him to his position as a part-time loader and unloader (hereinafter, the "May 2012 Decision") until the one-year waiting period elapsed. (*Id.* ¶ 31.)

Plaintiff tried again for a promotion in June and July 2013 (hereinafter, the "July 2013 Decision"). (*Id.* ¶ 32.) At that time, he reported to three individuals, including center manager Robert Truman, who was also over forty years old. (*Id.* ¶¶ 33–34.) During this attempt, plaintiff was "over allowed" on fourteen out of a possible fifteen days. (*Id.* ¶ 41; Gunn Dep. at 58.) In addition, plaintiff did not park his vehicle correctly, use safety techniques, or scan all of his packages for delivery. (Def.'s 56.1 ¶¶ 43–46.) In light of these performance problems, defendant decided that plaintiff did not complete the

---

[1] At the outset the Court notes that plaintiff failed to comply with Local Civil Rule 56.1, which required him to oppose defendant's Rule 56.1 Statement with "correspondingly numbered paragraph[s]." Instead, plaintiff submitted an opposition letter and documentary evidence in support, including portions of the CBA and various e-mails. Plaintiff's failure to comply "permits the court to conclude that the facts asserted in [defendant's] statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009). However, district courts retain broad discretion to overlook a party's non-compliance and "'conduct an assiduous review of the record.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000)), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009). In light of plaintiff's *pro se* status, the Court will do so here. *See Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012). Accordingly, the Court will only admit the facts in defendant's Rule 56.1 Statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 505 (S.D.N.Y. 2003).

2

probationary period and returned him to his prior part-time position once again. (*Id.* ¶ 47.) Following this failure, however, plaintiff's union filed a grievance, which ultimately gave plaintiff an opportunity to file his third attempt without having to wait one year. (*Id.* ¶¶ 54–55.)

However, plaintiff fared no better in his final attempt, which took place around December 2013 (hereinafter, the "December 2013 Decision"). (*Id.* ¶ 41; Gunn Dep. at 151–52.) Although plaintiff's delivery times improved, they were not consistently at "scratch" or "under allowed." (Def.'s 56.1 ¶ 57.) Additionally, he still failed to scan all packages for delivery, which could have resulted in thousands of dollars in damages. (*Id.* ¶¶ 62–63.) In another incident, a supervisor caught plaintiff using his cell phone while driving. (*Id.* ¶ 67.) On two occasions, plaintiff did not take the mandated one-hour lunch as required by the Supplemental Agreement. (*Id.* ¶¶ 58–59.) Despite these issues, he declined additional help. (*Id.* ¶ 69.) As a result, plaintiff failed to complete the probationary period and was sent back to his part-time position again. (*Id.* ¶ 70.)

Since the December 2013 Decision, plaintiff has not attempted to become a full-time package car driver. (*Id.* ¶ 77.) In his deposition testimony, plaintiff stated that he wants to become a full-time driver "on [his] terms." (Gunn Dep. at 172–73.) Nevertheless, plaintiff is still a UPS employee and may reapply for the package car driver position. (Def.'s 56.1 ¶ 78.)

3. Alleged Discrimination

In support of the alleged age discrimination, plaintiff points to an October 2013 meeting between Truman and various employees, including plaintiff, at which Truman allegedly asked the employees for their ages and then stated the following: "I like the young drivers. . . . Sorry[,] Jim." (Pl.'s Opp'n Ltr. at 4.) When asked about this comment during his deposition, plaintiff testified that "it wasn't a comment to [him], it was a comment that [Truman] made about his appreciation for . . . the younger drivers." (Gunn Dep. at 155.) Truman denies that he made this comment. (Truman Aff. ¶ 32; Gunn Dep. at 155.)

Plaintiff also attaches a letter written by Owen Pettit (hereinafter, the "Pettit Letter"), who identified himself as a package car driver who worked in a different location than plaintiff. Pettit's letter states that plaintiff's "age definitely would have counted against him." (Pl.'s Opp'n Ltr. Ex. B at 35–36.) However, the letter does not describe any comments or incidents in support of this statement, and Pettit acknowledges that he is "not familiar with all the facts in [plaintiff's] case." (*Id.* at 35.)

Separately, and contrary to plaintiff's assertions, the record reflects that, between 2012 and 2015, defendant promoted at least sixteen drivers over forty years old to the package car driver position and denied promotions to at least four drivers younger than forty years old. (Siotta Aff. ¶ 10; Truman Aff. ¶ 31.)

4. EEOC Filing

On June 27, 2014, plaintiff filed a charge with the EEOC[2] alleging age discrimination

---

[2] Plaintiff states that by February 2014, he retained counsel who contacted the EEOC. (*See* Pl.'s Jan. 15, 2016 Ltr. at 2 ("Our counsel at the time contacted UPS in February, 2014.").) However, plaintiff does not state,

3

occurring in June and December 2013.[3] (Compl. ¶ 5; Brochin Aff. Ex. E, EEOC Charge, at 116.) The EEOC dismissed the charge and issued plaintiff a Notice of Right to Sue on August 29, 2014. (Compl. at 8.)

B. Procedural History

Plaintiff filed this lawsuit on November 26, 2014. Defendant moved for summary judgment on February 16, 2016. Plaintiff submitted his opposition on March 16, 2016, and defendant replied on March 31, 2016. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW

To prevail on summary judgment, the moving party must "show[] that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the evidence, the Court must "assess the record in the light favorable to the non-movant and . . . draw all reasonable inferences in [his] favor." *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990).

Once the moving party has met this initial burden, the opposing party "'must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Put differently, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Second Circuit has also made clear, summary judgment is still available "even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (noting that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation"). Additionally, the Court recognizes that direct evidence of discrimination is rare and plaintiffs must often resort to circumstantial evidence to establish an employer's hidden motives. *See Holtz*, 258 F.3d at 69. However, "the mere incantation of intent or state of mind [cannot] operate as a talisman to defeat an otherwise valid motion." *Meiri*, 759 F.2d at 998.

Finally, the Court is mindful of plaintiff's *pro se* status. Accordingly, the Court must construe his submissions liberally and interpret them "'to raise the strongest arguments that they suggest.'" *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, plaintiff is not excused from "the usual requirements of summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002). Thus, "conclusory statements, conjecture, or speculation . . . will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

---

and the Court is not aware of, the content of that communication.

[3] Plaintiff's deposition testimony, however, states that the discrimination occurred in July 2013. (Gunn Dep. at 197–99.)

4

### III. DISCUSSION

#### A. LMRA Preemption

The Court will first address defendant's argument that the LMRA preempts plaintiff's claim. Specifically, defendant argues that the resolution of the ADEA claim is "substantially dependent" upon an interpretation of the CBA. If true, the United States Supreme Court has determined that such a claim is preempted by the LMRA. However, the Court finds that the CBA is only tangentially related to plaintiff's ADEA claim and, thus, there is no preemption by the LMRA.

##### 1. Legal Standard

Section 301 of the LMRA governs suits between an employer and a labor organization for a breach of a CBA. *See* 29 U.S.C. § 185(a) (2012). Therefore if the analysis of a state law claim is "substantially dependent" upon the interpretation of a CBA, "that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law."[4] *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citation omitted). The goal is to promote uniformity, "lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions." *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994). Thus, if a claim merely references a CBA and does not interpret its terms, section 301 does not apply. *Vera v. Saks & Co.*, 335 F.3d 109, 114–15 (2d Cir. 2003) (per curiam); *accord Cameron v. Idearc Media Corp.*, No. 08-12010-LTS, 2011 WL 4054864, at *8 (D. Mass. Sept. 9, 2011) ("Not every claim under the ADEA would necessarily be barred as a matter of labor policy merely because it tangentially involved a CBA.").

##### 2. Application

Although "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive," the result here is straightforward: the LMRA does not apply. *See Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001) (per curiam). Plaintiff testified that he wants to become a full-time driver "on [his] terms," thereby bypassing the requirements of the CBA. (Gunn Dep. at 172–73.) Although plaintiff attached pages of the CBA to his opposition letter, merely referencing the CBA does not transform an ADEA claim into an LMRA claim. *Vera*, 335 F.3d at 114 ("Not every suit concerning employment or tangentially involving a CBA . . . is preempted by section 301."). In fact, as the following exchange demonstrates, plaintiff is alleging unfair treatment based on his age:

> Q: So what you're seeking is for UPS to breach the Collective Bargaining Agreement?
>
> A: I am either looking for financial [sic] or to be put on in a different building, because I don't think I'm going to be treated fairly . . . .
>
> * * *
>
> Q: But you understand that

---

[4] To file a lawsuit under the LMRA, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement." *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990).

> [UPS is] bound by the Collective Bargaining Agreement?
>
> A: I understand that they are bound by the Collective Bargaining Agreement, but . . . I guess I can't see them allowing me [to go full time]. They're going to throw up . . . road blocks, whether it's to help somebody else out or . . . just not work me.

(Gunn Dep. at 172–73.) Put another way, plaintiff is challenging defendant's decision-making, not the meaning of the CBA or the lawfulness of its terms.

The decisions cited by defendant are distinguishable because, unlike the instant case, they require an explicit interpretation of a CBA. *See, e.g.*, *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62 (2d Cir. 2010) (requiring an application of a CBA where a professor alleged that a university violated the tenure review process outlined in the agreement); *Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 447–48 (S.D.N.Y. 2000) (applying a preemption analysis under the Railway Labor Act, an analogue of the LMRA, because the complaint required the interpretation of various terms in the CBA); *Cameron*, 2011 WL 4054864 at *1, *7 (concluding that the LMRA preempted an ADEA claim, in part, because the plaintiff argued that the defendant had no authority to eliminate under-performing sales employees based on an interpretation of a CBA). Thus, the LMRA is inapplicable.

B. Timeliness

Defendant argues that plaintiff's claim is barred by the statute of limitations. The Court agrees.

1. Legal Standard

To assert an ADEA claim in New York, a would-be litigant must file an administrative charge within 300 days of the alleged discriminatory conduct.[5] *Hodge*, 157 F.3d at 166. This filing deadline acts as a statute of limitations and starts to run when a "discrete discriminatory act" occurs. *See O'Grady v. Middle Country Sch. Dist. No. 11*, 556 F. Supp. 2d 196, 199 (E.D.N.Y. 2008). If the litigant misses the deadline, the claim is time-barred and should be dismissed unless there are grounds for equitable tolling. *See id.*

2. Application

Plaintiff filed his EEOC complaint on June 27, 2014. Thus, in order to comply with the 300-day window, the alleged discriminatory conduct must have taken place on or after August 31, 2013. However, plaintiff contends that he was discriminated against in July 2013.[6] Therefore, plaintiff's claim did not occur within the 300 days allowable and is, thus, untimely.[7]

Plaintiff challenges this conclusion, arguing that the alleged discrimination "continued into December 2013" and thus took place within the 300-day window. (*See*

---

[5] Generally, the filing deadline is 180 days from the alleged discrimination. *See* 29 U.S.C. § 626(d)(1)(A). However, in a "deferral state" like New York, where local agencies are authorized to address discrimination, an ADEA plaintiff has 300 days to file an EEOC charge. *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998).

[6] While the Complaint and the EEOC charge state that the discrimination occurred in June 2013 (Compl. ¶ 5; EEOC Charge at 116), plaintiff testified that the discrimination occurred in July 2013. (Gunn Dep. at 197–99.)

[7] Plaintiff does not challenge the May 2012 Decision, which is also time-barred.

Pl.'s Opp'n Ltr. at 5.) In support of this argument, plaintiff notes that the Complaint alleges that "[i]n December 2013 UPS wrongfully ended [plaintiff's] probationary driving position yet again." (Compl. ¶ 8.)

The Second Circuit has repeatedly recognized that a party cannot defeat summary judgment "'simply by submitting an affidavit [or letter] that contradicts the party's previous sworn testimony.'" *See, e.g.*, *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (quoting *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (per curiam)). To hold otherwise "'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). Thus, the Court will not "simply disregard plaintiff's earlier sworn testimony in favor of inconsistent post hoc statements prepared for purposes of this lawsuit." *See Better Env't, Inc. v. ITT Hartford Ins. Grp.*, 96 F. Supp. 2d 162, 168 (S.D.N.Y. 2000).

The fact that the Complaint pre-dates the deposition does not change this outcome. The court in *AB v. Rhinebeck Central School District* considered a similar situation and held that when "[f]aced with deposition testimony that contradicts an affidavit and a complaint, this court must accept [the party's] sworn testimony." 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005). In that case, a high school student filed a sexual harassment lawsuit in May 2003. *Id.* at 313–14. At her deposition, she based her claim on two incidents that occurred before January 1999. *Id.* at 315. The school district moved for summary judgment because the three-year statute of limitations barred any events prior to May 2000. *Id.* at 314–15. Plaintiff argued in response that her affidavit and complaint detailed an incident that occurred in June 2000, which would be timely. *Id.* at 315. The court concluded that the deposition testimony trumped any contradictory allegations made pre- and post-deposition. *Id.* at 316. In reaching this conclusion, the court relied on Second Circuit precedent establishing "the increased reliability of deposition testimony" and stated that the timing of contradictory allegations does not matter. *Id.* (citing *Better Env't, Inc.*, 96 F. Supp. 2d at 168). As the court further explained, the fact that the high school student did not discuss the June 2000 incident at her deposition "indicates that she did not consider it to have been relevant to her claims." *Id.* at 315–16.

Here, when asked at his deposition when he thought the discrimination occurred, plaintiff replied that it occurred in July 2013. (Gunn Dep. at 198–99 ("Q: So which decision do you think -- which decision to return you to [your workstation] do you think was based on your age? A: I think, uhm, it was July of 2013."); *see also* Caesar Aff. ¶ 6.) Accordingly, the Court will not consider the December 2013 Decision. *See McCullough v. Burroughs*, No. 04-CV-3216 (FB)(LB), 2008 WL 2620123, at *4 n.6 (E.D.N.Y. June 30, 2008).

Nor can plaintiff connect the July 2013 and December 2013 Decisions under the continuing violation exception. A continuing violation occurs "when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). Thus, if a plaintiff files a timely EEOC charge "as to any incident of discrimination in furtherance of an ongoing policy of discrimination," all claims are timely "even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (internal quotation

marks and citation omitted). However, this exception is inapplicable to "discrete acts" of discrimination, such as a failure to promote. *Id.* at 156 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Here, plaintiff's theory is that he was not promoted because of his age. Therefore, each allegation is a discrete act that falls outside of the continuing violation exception.

Moreover, any argument that plaintiff's attorney filed a timely EEOC charge in February 2014 is meritless. (*See* Pl.'s Jan. 15, 2016 Ltr. at 2 ("Our counsel at the time contacted UPS in February, 2014. This disputes their claim of EEOC not being filed in a timely manner [sic].").) As alluded to above, the EEOC enforces the provisions of the ADEA through a series of interpreting regulations, which require a prospective plaintiff to file a "charge." According to EEOC regulations, a "charge" must be "in writing" and "name the prospective respondent and . . . generally allege the discriminatory act(s)." 29 C.F.R. § 1626.6 (2016). The charge should also contain the following:

> (1) The full name, address and telephone number of the person making the charge;
>
> (2) The full name and address of the person against whom the charge is made;
>
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;
>
> (4) If known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization[; and]
>
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

*Id.* § 1626.8(a)(1)–(5). Essentially, "'notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the [ADEA's] machinery.'" *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 566 (2d Cir. 2006) (quoting *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983)). That has not happened here. There is no indication that this February 2014 communication was in writing or that it contains the information specified in sections 1626.6 and 1626.8. Additionally, plaintiff's deposition testimony references only the formal EEOC charge filed in June 2014. (*See* Gunn Dep. at 212–13.) Therefore, this February 2014 communication does not constitute an EEOC charge for the purposes of the timeliness inquiry under the ADEA.

Finally, plaintiff has not identified any reason why his claim should be subject to equitable tolling. That doctrine "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). However, it is only available in "'rare and exceptional'" cases—for example, where the

defendant engaged in misleading conduct or where the plaintiff suffered from a mental condition that prevented him from complying with the filing process. *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)). No such showing has been made here. Accordingly, the Court dismisses plaintiff's ADEA claim as untimely.

C. Merits Analysis

Finally, even if plaintiff's claim was timely, it would still fail on the merits. The record is devoid of any evidence showing that defendant failed to promote plaintiff because of his age. Thus, summary judgment is warranted.

1. Legal Standard

The ADEA prohibits discrimination against employees over forty years old because of their age. 29 U.S.C. § 623(a)(1). The purpose of the statute is to prevent an employer from "rely[ing] on age as a proxy for an employee's remaining characteristics, such as productivity." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). The plaintiff bears the burden of proving that "age was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 175–76, 178 (replacing the mixed-motives analysis, which allowed a plaintiff to show that an employer used both permissible and impermissible considerations in the adverse employment decision, with the "but-for" rule).

When a plaintiff presents no direct evidence of discriminatory treatment based on his age, the Court reviews his ADEA claim under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).[8] A plaintiff establishes a *prima facie* case of age discrimination under the ADEA by showing "(1) that []he was within the protected age group, (2) that []he was qualified for the position, (3) that []he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. Although the burden to survive a summary judgment motion is "*de minimis*," a plaintiff must provide "'admissible evidence show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04 (2d Cir. 1995) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)).

Once a plaintiff establishes a *prima facie* case of discrimination, "the burden of production [shifts] to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action." *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001)). If defendant articulates a legitimate, nondiscriminatory reason, plaintiff must then prove that defendant's articulated reasons are pretextual. *See id.* at 76. "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited

---

[8] Although the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context," *Gross*, 557 U.S. at 175 n.2, the Second Circuit has applied *McDonnell Douglas* to post-*Gross* ADEA cases. *See, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (holding that the Supreme Court's decision in *Gross* did not disturb "the [*McDonnell Douglas*] burden-shifting framework for ADEA cases that has been consistently employed in [the Second] Circuit").

9

[age] discrimination occurred.'" *Id.* (alteration in original) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000)).

2. Application

Under the first step of the *McDonnell Douglas* analysis, plaintiff has not made out a *prima facie* case. He failed to complete the probationary period and thus was not "qualified" for the package car driver position. *See Plaisner v. N.Y.C. Human Res. Admin.*, No. 87 Civ. 4318, 1989 WL 31495, at *4 (S.D.N.Y. Mar. 30, 1989) ("If a probationary employee does not perform his responsibilities satisfactorily during his probationary period, then the employee is not qualified to hold that position."), *aff'd*, 888 F.2d 1376 (2d Cir. 1989); *Lewis v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 562 F. App'x 209, 211–12 (5th Cir. 2014).

However, even if the Court assumes that plaintiff demonstrated a *prima facie* case and reaches the second step of the analysis, defendant has articulated a legitimate, nondiscriminatory reason for denying plaintiff a promotion. Leading up to the July 2013 Decision, plaintiff was consistently "over allowed" on his route, failed to work safely, and failed to scan multiple packages. (Gunn Dep. at 58, 82–83, 129–130.) Nor did his performance improve in December 2013 where he repeated the same mistakes. (*See, e.g.*, Def.'s 56.1 ¶¶ 57, 62–63.) Moreover, plaintiff failed to follow the Supplemental Agreement and take the mandated one-hour lunch break. (Gunn Dep. at 125–26.) He also continued to work unsafely and inefficiently, using his cell phone while driving a UPS vehicle and forgetting to scan multiple packages. (*Id.* at 132–33, 141–42.)

Thus, the record demonstrates that defendant chose not to promote plaintiff in light of the legitimate issues with his performance. Without evidence of a discriminatory intent, the Court will not second-guess that decision. "[I]t is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made." *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009); *see also Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 193 (E.D.N.Y. 2009) ("[T]he employer's burden of showing a legitimate nondiscriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are nondiscriminatory.").

Under the third step, the burden now shifts to plaintiff, who must show that defendant's reasons are pretextual. Even though plaintiff was "over allowed," he argues that his failure was due to "many contributing factors"—for instance, he was "not consistently on the same route" and "not consistently worked." (Pl.'s Opp'n Ltr. at 2.) Plaintiff also alleges that some days were just "[n]on scratchable." (*Id.* Ex. O, Log of Attempted Days, at 56–60.) Plaintiff further argues that defendant frequently altered his duties, pressuring him to help out other drivers. (Gunn Dep. at 70–72.)

These purported explanations for his under-performance, however, do not provide evidence of age discrimination. The court reached a similar conclusion in *Robinson v. Zurich North America Insurance Co.*, recognizing that courts cannot operate as "employment appeals boards" when "there is simply no evidence that the employment decision at issue, whether correct or incorrect, was motivated by a discriminatory purpose." 892 F. Supp. 2d 409, 431 (E.D.N.Y. 2012). In *Robinson*, an insurance auditor complained of age discrimination, among things, after she

was fired by her employer. *Id.* at 412. In particular, she argued that she received inadequate training and an increased workload. Nevertheless, the court concluded that "there [wa]s simply not a single piece of evidence that defendants' adverse employment actions were a pretext for . . . age discrimination." *Id.* at 431. The court also noted that the relevant decision-makers were within the protected class age, and the insurance auditor was hired when she was over forty years old. *Id.* at 432. The court also found "no evidence that younger employees not in the protected class were treated more favorably." *Id.*

Likewise here, plaintiff has not provided any evidence of preferential treatment for younger drivers. In a four-year period, defendant promoted at least sixteen drivers within the protected class age. (Siotta Aff. ¶ 10; Truman Aff. ¶ 31.) Moreover, defendant hired plaintiff when he was forty years old. *See Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 288 (E.D.N.Y. 2010) ("[C]ourts in this Circuit have recognized that any inference of age discrimination is undercut where, as here, a plaintiff is over 40 years old when []he is hired." (internal quotation marks and citations omitted)). It is also telling that Truman, the relevant decision maker, was over forty years old. (Truman Aff. ¶ 2.) *See also Drummond v. IPC Int'l Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (noting the "well-recognized inference against discrimination [that] exists where the person who participated in the allegedly adverse decision is also a member of the same protected class").

Moreover, plaintiff's case relies heavily on an October 2013 meeting, in which Truman allegedly stated that he "likes the young drivers." Truman denies making this statement (Truman Aff. ¶ 32), but even if he had, plaintiff admitted that "it wasn't a comment to [him], it was a comment that [Truman] made about his appreciation for . . . the younger drivers." (Gunn Dep. at 155.)[9] Moreover, since the comment was allegedly made in October 2013, the Court will not infer a causal connection between the comment and the December 2013 Decision. At best, Truman's comment was a stray remark made over the course of plaintiff's lengthy employment. *See Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination."). Accordingly, plaintiff has failed to put forth evidence from which a rational jury could conclude that "age was the 'but-for' cause of the challenged employer decision." *See Gross*, 557 U.S. at 178.

Plaintiff's remaining arguments, which rely on the Pettit Letter, the reference to "intimated" witnesses, and the allegations that plaintiff was "set up to fail," are meritless.

As a threshold matter, defendant does not have any record of an employee named "Owen Pettit." (Def.'s Reply Br. at 5 n.5.) Additionally, the Pettit letter contains inadmissible conclusions. Though Pettit asserts that plaintiff's "age definitely would have counted against him" (Pl.'s Opp'n Ltr. Ex. B at 35–36), he fails to describe specific instances of age discrimination. Finally, he concedes that he is "not familiar with all the facts in [plaintiff's] case." (Pl.'s Opp'n Ltr. Ex. B at 35.)

Next, plaintiff alleges that several

---

[9] Plaintiff's reliance on self-serving allegations that Truman berated him about his incompetence are also unavailing, as it is clear from plaintiff's e-mail to his attorney (Pl.'s Opp'n Ltr. Ex. L at 49), that Truman's comments concerned performance-related criticisms, not plaintiff's age.

witnesses—namely, current UPS employees—are available to support his case but were too "intimidated" to sign affidavits. (Pl.'s Opp'n Ltr. at 5.) However, defendant served plaintiff with a Notice to Pro Se Litigants, which informed him that he "must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial." Moreover, the Second Circuit has recognized, "[t]he assertion that trial will bring forth evidence is not sufficient to defeat summary judgment." *Portee v. Deutsche Bank*, No. 03 Civ. 9380(PKC), 2006 WL 559448, at *8 (S.D.N.Y. Mar. 8, 2006).

Finally, Plaintiff's assertion that he was "set up to fail" is likewise without merit. (Pl.'s Opp'n Ltr. at 3.) Plaintiff bases this conclusion on (1) an article detailing defendant's supposed history of discrimination, and (2) an e-mail from an individual named Bryan Kelly. (*Id.* at 3–4.) First, although the article states that age discrimination is a "common UPS lawsuit," this broad statement provides no evidentiary support to plaintiff. (*Id.* Ex. N at 55.) Second, the Bryan Kelly e-mail supports defendant's position, not plaintiff's. Kelly stated the following: "Regardless of the circumstances of your case, making book at UPS is something that very few trainees do. I trained countless drivers and only a handful made it." (*Id.* Ex. E at 40.) Accordingly, the fact that plaintiff tried and failed to complete the probationary period, standing alone, does not indicate that defendant discriminated against him based upon his age.

In sum, even if the Court credited all of plaintiff's evidence, there is no basis from which a rational jury could conclude that age was the "but for" cause—or even a motivating factor—in defendant's failure to promote plaintiff either in July or December 2013. *See Gross*, 557 U.S. at 178. Thus, summary judgment on the merits is proper in this case.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment. The Clerk of the Court shall enter judgment accordingly and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and thus *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 443–45 (1962).

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: August 22, 2016
       Central Islip, New York

\* \* \*

Plaintiff proceeds *pro se*. Defendant is represented by Heather Weine Brochin, Jessica Megan Arnold, and Michael Dell, Day Pitney LLP, One Jefferson Rd., Parsippany, NJ 07054.